UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULES E. NGAMBO,

Plaintiff,

-against-

LISA A. PURCELL, in her Official Capacity as Petitioner, et al.,

Defendants.

1:25-CV-9428 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff Jules E. Ngambo, of Garnerville, Rockland County, New York, appears *pro se* and brings this action invoking the court's federal-question jurisdiction.[1] He seems to assert claims for mandamus relief under 28 U.S.C. § 1651, claims for relief under the All Writs Act, 28 U.S.C. § 1651, as well as claims for relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. He also asserts claims of federal constitutional violations, as well as claims under 42 U.S.C. § 1985, and claims under state law. Plaintiff names as Defendants: (1) Lisa A. Purcell, who appears to be his ex-wife and the mother of his children; (2) former Support Magistrate Esther R. Furman, of the New York Family Court, Westchester County, in her official capacity; (3) Support Magistrate Jodi E. Hirschman, of the same court, in her official capacity; (4) Judge Michelle I. Schauer, of the same court, in her official capacity; (5) Judge Wayne Humphrey, of the same court, in his official capacity; (6) the Westchester County Department of Social

[1] Plaintiff refers to the submission that initiated this action as a "bill in equity for declaratory relief, permanent injunctive relief, and equitable remedies to void ultra vires chain of administrative orders violating constitutional, due process, peonage, conspiracy, and religious rights in child support, custody, and visitation proceedings." (ECF 1.) The Court will refer to it as the complaint. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

Services, Office of Child Support Enforcement; (7) the New York Family Court, Rockland County (referred to as the "Rockland County Family Court"); and (8) the State of New York.

Plaintiff has also filed, with his complaint, a motion for a temporary restraining order ("TRO") and a preliminary injunction ("PI"). (ECF 3.) He later filed a "letter motion/request for order directing U.S. Marshals service and status update" (ECF 8), a "motion for expedited hearing on temporary restraining order and preliminary injunction" (ECF 9), a "motion to seal records, restrict public access, and hold private hearings pursuant to the court's equitable powers" (ECF 10),[2] a "supplemental declaration of Jules E. Ngambo Pursuant to Fed. R. Civ. P. 15(d)" (ECF 11), and a "letter motion for status conference, order directing U.S. Marshals Service, ruling on pending motions, and expedited equitable relief" (ECF 13).

By order dated November 13, 2025, the court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), that is, leave to proceed without prepayment of the fees. For the reasons sent forth in this order, the Court dismisses this action and denies all of Plaintiff's motions and requests.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is

[2] As a result of this motion's filing, which was filed months after the complaint was filed, in an abundance of caution, the Court directed the Clerk of Court to restrict electronic access to Plaintiff's submissions filed in this action until a ruling was made on that motion.

obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted).

**BACKGROUND**

The following facts are drawn from the complaint and some of Plaintiff's other submissions.[3] On February 3, 2017, the New York Supreme Court, Rockland County, issued an Amended Decision and Order in Plaintiff's and Purcell's divorce action in that court "imputing $85,000 [in] annual income to Plaintiff . . . without [an] evidentiary hearing or consideration of business losses/tax returns submitted, [and] calculating child support [payments to be made by Plaintiff] at $1,042.71/month retroactive to October 2015." (ECF 1, at 6.) That court "ignored Plaintiff's indigency and Purcell's superior earnings"; child-custody and visitation issues were transferred to a New York Family Court for adjudication. (*Id.*)

On December 5, 2017, the New York Family Court, Rockland County, issued a Decision and Order "granting Purcell sole legal/physical [child] custody" and limiting Plaintiff's child visitations and custody, including with respect to religious holidays. (*Id.* at 7.) It appears that, in that same order, Purcell and Plaintiff's and Purcell's children ("the children") were permitted to relocate to Westchester County. (*Id.*) Plaintiff asserts that this Family Court Decision and Order made "[n]o adjudication of fitness[,] . . . [and] burden[ed] [his] religious exercise." (*Id.*)

In late 2019, Purcell accused Plaintiff "of child harm via unadjudicated hearsay," which initiated an investigation by a Child Protective Services agency; the result of that investigation was a determination, in or about January 2020, that the accusation was unfounded. (*Id.*) Despite

---

[3] The Court quotes from the complaint and other submissions verbatim. All spelling, grammar, and punctuation are as in the complaint and other submissions unless noted otherwise.

that finding, the Family Court terminated Plaintiff's parental rights "without hearing/consent" for one and one half years, and then that court "forc[ed] supervised reunification." (*Id.* at 7-8.)

On March 4, 2020, Judge Humphrey, of the New York Family Court, Westchester County, who was:

> unfamiliar with the case[,] conducted a 'show hearing' marked by instant bias, slander, and retaliation. Despite prior progress towards [the] children's best interest under the retired predecessor [judge], [Judge] Humphrey: (a) ignored financial affidavits denying assigned counsel without reason . . . (b) refused to sign pending/Amended [orders to show cause] on custody/visitation, denying court access . . . ; (c) coerced attorney hiring despite indigency; (d) discriminated pro se, barring case presentation as first petitioner; (e) relied on co-defendants' false hearsay/character assassination . . .; [and] (f) retaliated [against Plaintiff] for [his] recusal challenge . . . by threatening contempt, ordering . . . ejection, and impulsively terminating all parenting/visitation without fact, trial, or due process.

(*Id.* at 8.)

Judge Humphrey issued a Decision and Order dated August 5, 2021, in which he ordered Plaintiff to undergo "parenting program/reunification therapy" and ordered "progressive visitation" with the children; he also reduced Plaintiff's "FaceTime [sessions] with [the] children" and ordered that costs for "forensic/therapy" be shared equally between Plaintiff and Purcell, "overriding" the abovementioned 2017 Decision and Order in the divorce action. (*Id.* at 9.) Judge Humphrey further ordered Plaintiff to use a "Talking Parents" smartphone application and further reduced Plaintiff's custody/visitation sessions. (*Id.*)

On August 18, 2023, Plaintiff sought a change of the previous custody determinations, "citing 38 abuses/alienation[s] by Purcell." (*Id.*) Judge Schauer, however, dismissed that request "without adjudication." (*Id.*) Plaintiff's Family Court child-support issues escalated to the point

of possible enforcement by liens and/or incarceration; hearings regarding those issues took place on June 18, 2025, July 11, 2025, in September 2025, and on November 12, 2025.[4] (*See id.*)

While Plaintiff's complaint focuses on the state courts' imposition of child-custody and child-support determinations, his "motion for expedited hearing on [TRO] and [PI]" and in his "supplemental declaration . . . pursuant to Fed. R. Civ. P. 15(d)," which were filed months later,[5] indicate that, on November 12, 2025, he was taken into "coercive confinement" for eight days, "despite immediate purge of [child-support] arrears." (ECF 9, at 1; ECF 11, at 1.)

In his "letter motion for status conference, order directing U.S. Marshals service, ruling on pending motions, and expedited equitable relief," which was filed after the complaint and the abovementioned submissions,[6] Plaintiff states that, "[o]n or about March 9, 2026, [he] received a garnishment order in an amount exceeding $27,000 issued in furtherance of the . . . child support enforcement orders challenged herein." (ECF 13, at 2.) He also states that, on or about that same date, "the New York State Commissioner of Taxation and Finance levied approximately $42.00 from [his] bank account, reducing the balance to zero." (*Id.*)

In his complaint, Plaintiff seeks, among other relief:

> [for the Court] to quiet title to his fundamental parental rights and property interests, declare void ab initio the ultra vires chain of administrative orders from 2017 onward (including Rockland Supreme Court Amended Decision and Order dated February 3, 2017; Rockland Family Court Decision and Order dated December 5, 2017; 2019/2020 ex parte terminations; 2021 coercive escalations; and 2023 dismissals/enforcements in Westchester Family Court, File No. 154800 Docket Nos V-18042- 2019/2023M, V-18043-2019/2023M, and enjoin further enforcement that deprives him of life, liberty, and property without due process in violation of the Fifth and Fourteenth Amendments; burdens free exercise of

[4] Plaintiff filed his complaint in this court on November 12, 2025.

[5] Plaintiff filed both of these submissions in this court on March 4, 2026.

[6] Plaintiff filed this submission on April 2, 2026.

> religion under the First Amendment; imposes peonage under the Thirteenth Amendment; and facilitates conspiracy against rights under 42 U.S.C. § 1985.

(ECF 1, at 2.)

He also asks, in his complaint, for the Court to grant: (1) "a [TRO] . . . enjoining the November 12, 2025 hearing and all enforcement pending hearing, upon bond offer"; (2) "a [PI] post-notice"; (3) "declaratory relief voiding the entire 2017-2025 chain ab initio"; (4) "permanent equitable relief quieting title, restoring rights/property/restitution [$150,000+, e.g., all purged payments] plus interest, and imposing constructive trust on enrichments"; (5) cost and fees; (6) an "expedited proceedings; such further relief as just, including ancillary referral for investigation under 18 U.S.C. §§ 241-242 if malice shown"; (7) an "expedited hearing due to irreparable harm"; and (8) "[d]enial of IFP mooted by merits—alternatively, proceed at law under [42 U.S.C.] § 1983 if/where equity unavailable." (*Id.* at 11-12.)

Plaintiff filed, along with his complaint, a motion for a TRO and a PI in which he seeks, among other unspecified relief, a TRO "enjoining the Defendants from enforcing the ultra vires chain of orders (2017-2025), including the November 12, 2025, Confirmation of Willfulness hearing (functionally an inquest under N.Y. Fam. Ct. Act § 454(3)(a) to ratify default and authorize incarceration), and all liens/incarceration threats, pending merits hearing." (ECF 3, at 1.)

## DISCUSSION

### A. Motion to seal

Months after Plaintiff filed his complaint, he filed a "motion to seal records, restrict public access, and hold private hearings pursuant to the court's equitable powers." (ECF 10.) The Court construes that motion, at least in part, as requesting that the court seal all of the submissions that Plaintiff has filed in this action. The Court, however, must deny that motion.

Both the common law and the First Amendment protect the public's right of access to court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the Court must determine whether the document at issue is indeed a "judicial document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted).

Second, if the Court determines that the material to be sealed is a judicial document, then the Court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995).

Finally, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or

judicial efficiency and the privacy interests of those resisting disclosure."[7] *Id.* (internal quotation marks and citation omitted). If the information at issue has already been made publicly available, such availability weighs against restricting public access to it. *See, e.g.*, *Kanellos v. Rockland Cnty. CPS*, No. 7:25-CV-10091 (NSR), 2026 WL 1122400, at *8 (S.D.N.Y. Apr. 26, 2026) (citing cases).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Pleadings, which include the document that initiates a civil suit (a complaint), *see* Fed. R. Civ. P. 3, 7(a)(1), and by extension, any supplements to the complaint, are considered judicial documents for the purpose of this analysis, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016). The same is true for IFP applications, *see, e.g.*, *Komatsu v. City of New York,* No. 1:20-CV-6510 (LLS), 2020 WL 8641272, at *1 (S.D.N.Y. Sept. 2, 2020), motions to seal, *e.g.*, *Brunkhorst v. Bischoff*, No. 21-CV-4362 (JPC), 2023 WL 1433573, at *1 (S.D.N.Y. Feb. 1, 2023), and motions for a TRO and a PI, *e.g.*, *Batanjany v. Clear St. Mgmt. LLC*, No. 1:25-CV-8420 (AT) (RWL), 2026 WL 1362168, at *3 (S.D.N.Y. May 15, 2026). A consent to electronic service of court documents (such as Plaintiff's (*see* ECF 5)) can be

[7] As to the relevant First Amendment analysis, there are two different approaches. The first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The Second Circuit has noted that "[t]he courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation and internal quotation marks omitted). As to the second approach, courts "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted). Here, because the common law right of access requires the Court to deny Plaintiff's motion to seal this action, there is no need to discuss these approaches to First Amendment analysis.

considered a judicial document in that it is "relevant to the performance of the judicial function and useful in the judicial process, " *Lugosch*, 435 F.3d at 119 (internal quotation marks and citation omitted); it expresses a litigant's intent to waive traditional service of court documents by the court and to receive such documents by electronic means.

Most, if not, all of Plaintiff's submissions in this action are considered to be judicial documents for the purposes of this analysis—if they are not in their own right, they are, to the extent that they supplement Plaintiff's *pro se* complaint; the presumption of public access as to Plaintiff's submissions is thus strong.

With regard to Plaintiff's privacy concerns, Plaintiff asserts that this action "involves sensitive private . . . matters, . . . religious burdens . . . , financial indigency proofs, and child custody details that, if public, would cause irreparable harm, including harassment, spiritual distress, and exacerbation of parental alienation." (ECF 10, at 1-2.) Plaintiff filed his complaint, IFP application, and motion for a TRO and PI on November 12, 2025; he did not file the motion at issue (to seal), however, until months later, on March 4, 2026. Thus, for months, those matters that he cites as reasons for sealing—his divorce, child-custody, child-support, religious, and related indigency matters—were included in his court submissions that were available for public view. Such matters, in and of themselves, do not require sealing. *See e.g.*, *Bonsignore v. N.Y.S. Dep't of Tax'n & Fin.*, 1:25-CV-6324 (VSB) (GS), 2026 WL 1724241, at *1 (S.D.N.Y. June 15, 2026) (Stein, M.J.) ("Family Court orders and filings do not necessarily require sealing when later used in related actions." (citing cases)); *Lively v. Wayfarer Studios LLC*, No. 1:24-CV-10049 (LJL), 2026 WL 145483, at *6 (S.D.N.Y. Jan. 20, 2026) ("[A]n individual's assertion that they are not a member of a certain religion is not so personal as to fall among 'the most compelling reasons' justifying sealing."); *SEC v. Ahmed*, No. 3:15-CV-675, 2022 WL 16753233,

at *1 (D. Conn. May 10, 2022) ("the dissolution of the [litigant's] marriage is no longer a purely private matter").

Accordingly, there is no reason for any of Plaintiff's submissions to be sealed. The Court therefore denies the motion at issue, inasmuch as Plaintiff seeks to have sealed the submissions that he has filed in this action. (*See* ECF 10.) The Court therefore directs the Clerk of Court to lift all restrictions on access to the submissions filed in this action.

**B. Domestic-relations abstention doctrine**

To the extent that Plaintiff asks this Court, under its federal-question jurisdiction, to determine (1) whether he should have any custody of his children and, if so, under what circumstances; (2) whether he is responsible for any future child-support obligations and, if so, what those obligations are; (3) whether he owes any child-support arrears and, if so, the amount of said arrears; and (4) whether any such child-support obligations should be enforced and/or any such child-support arrears should be satisfied and, if so, the manner of such enforcement/satisfaction, the Court must dismiss those claims. Federal district courts must abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims may be fully and fairly determined in the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court must abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted); *see also Deem v. DeMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("[T]he domestic relations *abstention* doctrine articulated in *American Airlines* [applies with respect to a federal court's federal-question jurisdiction]. And . . . *American Airlines* remains good law in this Circuit."). This doctrine also precludes federal district courts from getting involved in state-court ordered child-support enforcement matters. *See, e.g.*,

*Lampkin v. Feria*, No. 1:26-CV-0822 (KMW), 2026 WL 621866, at *2 (S.D.N.Y. Mar. 4, 2026); *Richardson v. Richman*, No. 25-CV-5155, 2025 WL 2962741, at *2 (E.D.N.Y. Oct. 21, 2025) ("Since Plaintiff's claims concern only the enforcement and validity of a state court's child support order, this case falls under the scope of the domestic-relations abstention doctrine.").

Plaintiff has alleged no facts showing that he cannot have the abovementioned issues fully and fairly litigated within the courts of the State of New York. *See Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law . . . is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."). His disagreements with the decisions of the New York Supreme Court and/or of the New York Family Court are not reasons to bring such claims here, to a federal district court; they are reasons to appeal in the New York State appellate courts.[8] *See id.*; *see also Newsome v. Villaseñor*, No. 1:26-CV-8774 (VSB), 2026 WL 1214592, at *3 n.4 (S.D.N.Y. May 1, 2026) ("Nothing in Petitioner's complaint plausibly suggests that his claims regarding custody of his children could not be fully determined in the state courts, where an appeal process is available to correct any error."); *McArthur v. Bell*, 788 F. Supp. 706, 709 (E.D.N.Y. 1992) ("[A]ll of [the plaintiff's] allegations . . . are directly related to the aforementioned [child-support] modification proceedings . . . . [T]his Court would be forced to re-examine and re-interpret all the evidence brought before the state court in the domestic relations proceedings. That is the role of the Appellate Division. It is not the role of this Court."). Thus, to the extent that Plaintiff asks this court, under its federal-question jurisdiction, to make the abovementioned determinations as to child custody and to child support, including as to

[8] This is not the first time that the court has informed Plaintiff about the application of the domestic-relations abstention doctrine in relation to one of his child-support proceedings in the New York Family Court, Westchester County. *See Ngambo v. Purcell*, No. 1:22-CV-8550 (LTS), 2022 WL 13826138, at *2-3 (S.D.N.Y. Oct. 19, 2022).

child-support enforcement and arrears satisfaction, the Court dismisses those claims under the domestic-relations abstention doctrine.[9]

**C. State-law claims**

A federal district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed all of the claims over which the Court has original subject-matter jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims that Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d

[9] Plaintiff seems to ask this Court to overturn final orders or judgments issued in his state-court child-custody and child-support proceedings. But that is prohibited by the *Rooker-Feldman* doctrine—a federal district court cannot reject or overturn a final state-court order or judgment, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005), "regardless of whether such [a] state-court [order or] judgment[] [is a] final trial-court [order or] judgment[] or . . . [one issued by] a State's highest court," *see T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1748- 52 (2026). This includes when a litigant asks a federal district court to do so with respect to a state-court child-custody or child-support final order or judgment. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403-04 (2d Cir. 2013) (discussion in the child-support judgment validity and enforcement context); *Green v. Mattingly*, 585 F.3d 97, 102-03 (2d Cir. 2009) (child-custody context).

In the alternative, Plaintiff appears to seek this Court's intervention in what may be pending state-court child-custody and child-support proceedings. The *Younger* abstention doctrine prevents this court from doing so, in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *Green*, 585 F.3d at 102-03 (non-final state-court child-custody determination); *Comm'r of Soc. Servs. ex rel. Hendricks v. Hendricks*, No. 2:26-CV-3293, 2026 WL 1815843, at *4 (E.D.N.Y. June 24, 2026) ("Courts in this Circuit have found that *Younger* abstention applies to state court actions involving child support issues."). Plaintiff is aware of this doctrine's applicability to his state-court child-support proceedings. *See Ngambo*, 2022 WL 13826138, at *3 n.1. And here, he has alleged nothing to suggest bad faith, harassment, or irreparable injury that would allow this Court to intervene.

Cir. 2006) ("Subsection (c) of [Section] 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D. Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**CONCLUSION**

The Court dismisses this action. The Court dismisses Plaintiff's federal-law claims under the domestic-relations abstention doctrine. To the extent that Plaintiff raises claims under state law, under the court's supplemental jurisdiction, the Court declines to consider such claims. *See* 28 U.S.C. § 1367(c)(3).

The Court denies all pending motions and requests. The Court therefore directs the Clerk of Court to terminate ECF 3, 8, 9, 10, 13, and 14.

Because the Court denies Plaintiff's motion in which he requests, in part, to have his court submissions filed in this action sealed (ECF 10), the Court also directs the Clerk of Court to lift all restrictions on electronic access to the submissions filed in this action.

The Court further directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated: September 3, 2026
New York, New York

Louis L. Stanton

Louis L. Stanton
U.S.D.J.